**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| T3 MICRO, INC., et al., | NO. CV 09-08783 SJO (AGRx) |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS, FOR A MORE DEFINITE STATEMENT AND TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| SGI CO., LTD., et al., | |
| Defendants. | [Docket No. 64] |

This matter is before the Court on Defendants SGI Co., Ltd. ("SGI"), Shin Woo Good Item Corporation ("Shin Woo Good"), Hair Technic, Suhp Hur, and Min Hur's (collectively, "Defendants") Motion to Dismiss, for a More Definite Statement, and to Strike Portions of Plaintiffs T3 Micro, Inc. ("T3") and Kent Yu's ("Yu") (collectively, "Plaintiffs") Second Amended Complaint ("SAC"), filed May 17, 2010. Plaintiffs filed an Opposition, to which Defendants replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for June 14, 2010. *See* Fed. R. Civ. P. 78(b). For the following reasons, Defendants' Motion is **DENIED**.

I.      BACKGROUND

      A.      Factual Background

      T3, a California corporation, is a well-known designer, maker, and distributor of professional hair styling products, including hair dryers, curling irons, straighteners, and accessories (the "Hair Products").  (SAC ¶ 15.)  T3 markets and sells the Hair Products to its clients in various countries around the world.  (SAC ¶ 16.)  Yu, an individual residing in California, is a minority shareholder of SGI.  (SAC ¶ 2; Defs.' Mot. to Dismiss, for a More Definite Statement, and to Strike Portions of Pls.' SAC ("Defs.' Mot.") 7:16-18.)  SGI, Shin Woo Good, and Hair Technic ("Corporate Defendants") are Korean corporations with their principal places of business in the Republic of Korea.  (SAC ¶¶ 3-7.)  Defendants Suhp and Min Hur ("Individual Defendants") are individuals residing in the Republic of Korea and majority shareholders and directors of SGI.  (SAC ¶ 8; Defs.' Mot. 7:16-18.)

      Plaintiffs argue that in 2004, Defendants offered to manufacture and produce T3's Hair Products.  (SAC ¶ 17.)  Plaintiffs claim that Defendants told T3 that they had the "experience, capability, expertise, capacity, know-how, and ability to timely assemble and deliver high-quality [Hair Products] to T3."  (SAC ¶ 17.)  Plaintiffs further contend that Defendants and T3 subsequently entered into a partially written and partially oral manufacturing contract whereby Defendants would produce the Hair Products using T3's designs and intellectual property, to be sold exclusively by T3 (the "Manufacturing Agreement").[1]  (SAC ¶¶ 17, 24.)  Pursuant to the Manufacturing Agreement, Plaintiffs allege that T3 retained the "exclusive right to use the T3 mark and trade name" and Defendants agreed to replace any defective Hair Products on a "goods-for-goods basis" (the "Warranty Agreement").[2]  (SAC ¶ 18; Defs.' Mot. 8:4.)

---

[1]  The Court notes that neither side clarifies which terms of the Manufacturing Agreement were written and which terms were orally agreed to.  (*See generally* Defs.' Mot.; *see generally* Pls.' Opp'n.)

[2]  Defendants allege that this Warranty was an oral term.  (Defs.' Mot. 8:4.)

1   Additionally, Plaintiffs aver that during the course of the above-mentioned dealings, T3 and
2   Defendants jointly invested in tooling required for the manufacture of the Hair Products with the
3   express understanding that the tooling would be used solely for the manufacture of the Hair
4   Products to be sold by T3 (the "Tooling Agreement").[3]  (SAC ¶ 19.)  Plaintiffs contend, however,
5   that Defendants failed to meet T3's Hair Product specifications at a rate "significantly exceed[ing]
6   industry standards," and refused to replace "defective [Hair Products]." (SAC ¶ 36.)  Finally,
7   Plaintiffs argue that Defendants produced the Hair Products using T3's intellectual property and
8   tooling for Defendants' own benefit in contravention of both the Manufacturing and Tooling
9   Agreements (the "Agreements").  (SAC ¶ 21.)

10   B.   Procedural Background

11   The instant action was originally filed in state court and removed to federal court by
12   Defendants on November 30, 2009.  (*See generally* Notice of Removal.)  On April 13, 2010,
13   Plaintiffs filed their SAC wherein T3 alleges the following claims: (1) breach of the Manufacturing
14   Agreement; (2) breach of the Tooling Agreement; (3) breach of the implied covenant of good faith
15   and fair dealing; (4) misappropriation of trade secrets pursuant to California Civil Code §§ 3426,
16   *et seq.*; (5) fraud; (6) intentional interference with prospective economic advantage; and
17   (7) trademark infringement.  (*See generally* SAC.)  Yu alleges the following causes of action:
18   (8) fraud, misrepresentation, and non-disclosure of material facts; and (9) breach of fiduciary duty.[4]
19   (*See generally* SAC.)

20   On May 17, 2010, Defendants filed the instant Motion, requesting that this Court:
21   (1) dismiss Plaintiffs' first, fourth, and fifth causes of action pursuant to Federal Rules of Civil
22   Procedure ("Rule") 8(a), 9(b) and 12(b)(6), or alternatively, provide a more definite statement

23

24   [3]  "Tooling" is a term used by both parties to refer to "tools . . . required for the
25   manufacturing of parts for the [Hair Products]."  (SAC ¶ 38.)

26   Defendants contend and Plaintiffs concede that the Tooling Agreement was an oral
27   agreement.  (Defs.' Mot. 3:6-7.)

28   [4]  T3 brings claims 1-7 against all Defendants.  Yu brings claims 8-9 against all Defendants.
(*See generally* SAC.)

1  pursuant to Rule 12(e); (2) dismiss Hair Technic and Individual Defendants from Plaintiffs' first,
2  second, and third causes of action because they are not parties to the Agreements; (3) dismiss
3  Plaintiffs' eighth and ninth causes of action based on the doctrine of forum non conveniens; and
4  (4) strike Plaintiffs' alter ego allegations based on the doctrine of forum non conveniens.  (*See*
5  *generally* Defs.' Mot.)

6  II.    DISCUSSION

7          A.    Standard for Motion to Dismiss

8          A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims
9  asserted in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  A court
10  accepts the plaintiff's material allegations in the complaint as true and construes them in the light
11  most favorable to the plaintiff.  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).
12  Dismissal is proper if the complaint lacks a "cognizable legal theory" or "sufficient facts alleged
13  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
14  (9th Cir. 1988).  In pleading sufficient  facts, a plaintiff must proffer "enough facts to state a claim
15  to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).
16  Moreover, a complaint must contain "more than labels and conclusions."  *Id.* at 555.

17          B.    Breach of the Manufacturing Agreement Claim

18          Defendants contend that Plaintiffs' breach of the Manufacturing Agreement claim should
19  be dismissed because: (1) Plaintiffs fail to state a claim for relief as required by Rule 8(a)(2); and
20  (2) it violates the Statute of Frauds.  (Defs.' Mot. 2:9-17.)  Alternatively, Defendants request that
21  the Court order Plaintiffs to provide a more definite statement specifying which terms of the
22  Manufacturing Agreement were oral, and which were written, pursuant to Rule 12(e).[5]  *See* Fed.
23  R. Civ. P. 12(e); Defs.' Mot. 10:16-20.

24

25

26

27          [5] Rule 12(e) states in pertinent part: "A party may move for a more definite statement of
a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the
28  party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

4

### 1.   Dismissal Pursuant to Rule 12(b)(6)

To establish a prima facie case for breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff as a result of the breach.   *See Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412, 425 (Cal. Ct. App. 2004).   Here, Plaintiffs allege: (1) a Manufacturing Agreement existed between Plaintiffs and Defendants; (2) Defendants manufactured goods specifically for Plaintiffs; (3) Defendants did not meet their contractual obligations; and (4) Plaintiffs suffered both monetary and reputational damages as a result of Defendants' breach.  (SAC ¶¶ 24-35.)   As Plaintiffs allege each of the elements for a breach of contract claim pursuant to *Armstrong Petroleum Corp.*, Plaintiffs sufficiently plead their breach of the Manufacturing Agreement claim.

### 2.   Dismissal Pursuant to the Statute of Frauds

The Statute of Frauds, which is codified by California Civil Code §1624 ("§1624"), states that a contract "that by its terms is not to be performed within a year from the making thereof [is] invalid, unless [it] . . . [is] in writing . . . ."  Cal. Civ. Code § 2201.   However, under the Uniform Commercial Code (the "U.C.C.") § 2-201(3) ("§ 2-201(3)"), a contract may be exempted from § 1624's writing requirement "if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller . . . has made either a substantial beginning of their manufacture or commitments for their procurement."  U.C.C. § 2-201(3) (2003).

Here, Defendants contend that Plaintiffs admit that the Warranty Agreement is an oral agreement for Defendants to "manufacture and ship a working replacement for each [Hair Product] returned from four years from the date of purchase."  (Defs.' Mot. 8:4-12.)   Consequently, Defendants allege that since the Warranty Agreement cannot be completed within one year, § 1624 requires that it be placed in writing. (Defs.' Mot. 8:13-18.)  However, because the Warranty Agreement is partially oral, Defendants argue that it does not comply with § 1624's writing requirement, and therefore, fails.  (Defs.' Mot. 8:13-18.)

1     In response, Plaintiffs argue that the Warranty Agreement falls under § 2-201(3)'s specially

2     manufactured products exception to § 1624 because: (1) Defendants produced Hair Products that

3     were to be sold exclusively by Plaintiffs; and (2) Defendants had no right to "sell or otherwise

4     market or manufacture [the Hair Products], or any product[s] incorporating the T3 designs, for any

5     third party."[6]  (Pls.' Opp'n to Mot. to Dismiss, for a More Definite Statement and to Strike Portions

6     of Pls.' SAC ("Pls.' Opp'n") 6:20-23; SAC ¶ 24.)  As such, because Plaintiffs sufficiently plead that

7     the Hair Products were specially manufactured, pursuant to § 2-201(3), § 1624 does not bar

8     Plaintiffs' breach of the Manufacturing Agreement claim.  *See* U.C.C. § 2-201(3).

9     Accordingly, because Plaintiffs sufficiently state a claim upon which relief may be granted,

10    as well as sufficiently allege that the Warranty Agreement is exempted from § 1624's writing

11    requirement, Defendants' Motion is DENIED to the extent it seeks to dismiss Plaintiffs' breach of

12    the Manufacturing Agreement claim.

13    C.    Misappropriation of Trade Secrets Claim

14    A plaintiff alleging misappropriation of trade secrets must plead facts showing: (1) the

15    existence of subject matter which is capable of protection as a trade secret; and (2) the secret was

16    disclosed to the defendant under circumstances giving rise to a contractual or other legally

17    imposed obligation on the part of the disclosee not to use or disclose the secret to the detriment

18    of the discloser.  *See Diodes, Inc. v. Franzen*, 67 Cal. Rptr. 19, 22 (Cal. Ct. App. 1968).  Here,

19    Defendants contend that Plaintiffs' misappropriation of trade secrets claim fails to satisfy Rule 8(a),

20    which requires that a pleading must contain "a short and plain statement of the claim showing that

21    the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); Defs.' Mot. 2:9-17.

22

23

24    _____

25    [6]  U.C.C. § 2-201(3) provides in pertinent part: "[a] contract that does not satisfy the
      requirements [for a writing] but which is valid in other respects is enforceable: (a) if the goods are
26    to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary
      course of the seller's business and the seller, before notice of repudiation is received and under
27    circumstances that reasonably indicate that the goods are for the buyer, has made either a
      substantial beginning of their manufacture or commitments for their procurement."  U.C.C. § 2-
28    201(3).

1              1.    Existence of Subject Matter Capable of Protection

2    To satisfy this element, a plaintiff must describe the subject matter of the trade secret with:

3              sufficient particularity to separate it from matters of general knowledge

4              in the trade or of special knowledge of those persons who are skilled

5              in the trade . . . , to permit the defendant to ascertain at least the

6              boundaries within which the secret lies . . . . and to provide reasonable

7              guidance in ascertaining the scope of appropriate discovery.

8    *Diodes, Inc.*, 67 Cal. Rptr. at 24.  It is insufficient for a plaintiff to simply allege that he or she has

9    a trade secret.  *Id.*  However, a plaintiff need not "spell out the details of the trade secret to avoid

10   a demurrer to a complaint.  To so require would mean that the complainant would have to destroy

11   the very thing for which he sought protection by making public the secret itself."  *Id.*

12         Here, Plaintiffs allege that Defendants misappropriated "product designs, design

13   specifications, original inventions, improvements, molds and tooling, customer/

14   vendor/distributor/client lists, and manufacturing processes for [Plaintiffs' Hair Products]."  (SAC

15   ¶¶ 26, 50, 54.)  These contentions, although somewhat conclusory, sufficiently outline "the

16   boundaries within which the secret lies."  *Diodes, Inc.*, 67 Cal. Rptr. at 24.  Thus, Plaintiffs

17   sufficiently plead the existence of subject matter which is capable of protection as a trade secret.[7]

18   *See* Fed. R. Civ. P. 8(a).  Accordingly, Defendants' Motion is DENIED to the extent it seeks to

19   dismiss Plaintiffs' misappropriation of trade secrets claim.

20         D.    Fraud Claim

21         To allege fraud, the heightened pleading requirement of Rule 9(b) requires that a plaintiff

22   "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

23   Thus, to plead fraud with sufficient particularity, "the complaint must allege the time, place, and

24   content of the fraudulent representation; conclusory allegations do not suffice."  *Shroyer*

25   *v. New Cingular Wireless Servs., Inc.*, 606 F.3d 658, 665 (9th Cir. 2010).  Plaintiffs' SAC clearly

26

27         [7]  Because Plaintiffs must satisfy both elements of misappropriation of trade secrets, but
     have not satisfied the first element, the Court declines to address the second element, Defendants'
28   obligations to not disclose Plaintiffs' trade secrets.  *See Diodes, Inc.*, 67 Cal. Rptr. at 22.

7

1   states a definite time during which the alleged fraud was committed, 2004-2008, and also alleges

2   that said fraud occurred during the course of business dealings.   (SAC ¶¶ 61, 66, 73.)

3   Furthermore, Plaintiffs specify which of Defendants' statements and actions were allegedly

4   fraudulent: (1) statements that the Hair Products would be produced in Korea; (2) promises to not

5   use Plaintiffs' trade secrets for Defendants' own benefit; and (3) promises to not use Plaintiffs'

6   tooling to produce non-T3 products.[8]  (SAC ¶¶ 61-78.)  Accordingly, because Plaintiffs plead their

7   fraud claim with sufficient particularity, Defendants' Motion is DENIED to the extent it seeks to

8   dismiss Plaintiffs' fraud claim.

9       E.   <u>Intentional Interference with Prospective Economic Advantage Claim</u>

10      To successfully plead an intentional interference with prospective economic advantage

11  claim, a plaintiff must show:

12          (1) an economic relationship between the plaintiff and some third party

13          with the probability of future economic benefit to the plaintiff; (2) the

14          defendant's knowledge of the relationship; (3) intentional acts on the

15          part of the defendant designed to disrupt the relationship; (4) actual

16          disruption of the relationship; and (5) economic harm to the plaintiff

17          proximately caused by the acts of the defendant.[9]

18

19  _____

20      [8]  Defendants contend that Plaintiffs' SAC fails to satisfy Rule 9(b)'s heightened pleading
    requirements because the SAC "does not describe the purported 'Inventions' with any
21  particularity." (Defs.' Mot. 12:12-13.) However, Plaintiffs allege that the Manufacturing Agreement
    established that Defendants would produce the Hair Products using T3's designs and intellectual
22  property to be sold exclusively by T3.  (SAC ¶¶ 17, 24.)  For a motion to dismiss, a court accepts
    the plaintiff's material allegations in the complaint as true and construes them in the light most
23  favorable to the plaintiff. *Shwarz*, 234 F.3d at 435.  Based on Plaintiffs' assertions, Defendants
    would be bound to not use *any* of T3's designs and intellectual property, including the purported
24  "Inventions," disclosed to Defendants.  Accordingly, Defendants' argument has no merit.

25      [9]  Defendants' argument that Plaintiffs are claiming interference of prospective economic
    advantage with an entire global market is without merit.  (Defs.' Mot. 13:11-22.)  The Court
26  construes Plaintiffs' reference to "customers world-wide" as referring to specific clients located in
    certain countries around the world.  (SAC ¶ 80; Pls.' Opp'n 10:25-27.)  Furthermore, the Court
27  acknowledges that requiring Plaintiffs to disclose specific customer names at this stage of litigation
28  could raise additional customer privacy or trade secret protection issues.

1   *Westside Center Assocs. v. Safeway Stores 23, Inc.* ("*Westside Center*"), 49 Cal. Rptr. 2d 793,

2   802 (Cal. Ct. App. 1996).  Further, a plaintiff must show that the "[d]efendant not only knowingly

3   interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal

4   measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,

5   45 Cal. Rptr. 2d 436, 447 (Cal. 1995).

6        Here, Plaintiffs allege that: (1) they had existing economic relationships with "distributors,

7   retailers, consumers, professionals, and vendors" in multiple countries; (2) Defendants knew of

8   said relationships; (3) Defendants engaged in wrongful acts with the intent to disrupt said

9   relationships; (4) Defendants' actions disrupted said relationships when Defendants produced and

10  sold imitation products; and (5) Plaintiffs have suffered resulting damages.  (SAC ¶¶ 80-85.)

11  Plaintiffs further contend that Defendants engaged in wrongful and unlawful acts intended to

12  interfere with Plaintiffs' prospective economic advantage when by "palm[ing] [off goods] [that

13  came] from T3, . . . committ[ing] fraud, wrongfully used [T3's intellectual property] . . . , [and]

14  misappropriat[ing] [T3's] trademarks and designs . . . ."  (SAC ¶ 82.)  These statements are

15  sufficient to allege the elements of an intentional interference of prospective economic advantage

16  claim, pursuant to *Della Penna* and *Westside Center.  See Della Penna,* 45 Cal. Rptr. 2d at 447;

17  *see Westside Center*, 49 Cal. Rptr. 2d at 802.  Accordingly, because Plaintiffs sufficiently plead

18  their intentional interference with prospective economic advantage claim, Defendants' Motion is

19  DENIED to the extent it requests that said claim be amended.

20        F.    Request to Dismiss Defendants Suhp Hur, Min Hur, and Hair Technic from Plaintiffs'

21              First, Second, and Third Causes of Action

22        Here, SGI and Shin Woo Good allege that Defendants Suhp Hur, Min Hur, and Hair

23  Technic are not alter egos, and so should be dismissed from Plaintiffs' first, second, and third

24  claims.  (*See generally* Defs.' Mot.)  To sufficiently plead alter ego, a plaintiff must show that:

25  (1) "there is such a unity of interest that the separate personalities of the corporation and individual

26  no longer exist[;]" and (2) "inequitable results will follow if the corporate separateness is

27  respected." *Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 443 (Cal. Ct. App. 1994).

28

1    Here, Plaintiffs allege that Defendants had a unity of interest as each Defendant conducted
2    business with inadequate capital to meet their own personal obligations, there was a unity of
3    ownership amongst Defendants, and Defendants' assets are commingled to the extent that each
4    Defendants' separate obligations are paid and funded by the other Defendants.  (SAC ¶ 13.)
5    These allegations sufficiently indicate a unity of interest.  *See Tomaselli*, 31 Cal. Rptr. 2d at 443.
6        Plaintiffs also allege, and sufficiently plead, that "adherence to the fiction of a separate and
7    independent existence of each Defendant would sanction inequity and injustice . . . ." (SAC ¶ 13.)
8    Thus, because acknowledging the corporate fiction would result in inequity and justice, Plaintiffs
9    sufficiently plead that Suhp Hur, Min Hur and Hair Technic are alter egos of SGI and
10   Shin Woo Good.
11       Accordingly, Defendants' Motion is DENIED to the extent it requests that Suhp Hur,
12   Min Hur, and Hair Technic be dismissed from Plaintiff's first, second, and third claims.
13       G.    Forum Non Conveniens
14       Defendants seek to transfer Plaintiffs' fraud and breach of fiduciary duties claims to the
15   Republic of Korea.  (Defs.' Mot. 15:17-19.)  Federal courts have discretion to dismiss a case on
16   grounds of forum non conveniens "when, in light of certain conditions, the trial court thinks that
17   jurisdiction ought to be declined."  *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994).  To
18   invoke forum non conveniens, a defendant must prove: (1) the existence of an adequate
19   alternative forum; (2) choice of law does not militate in favor of retaining the case; and (3) the
20   balance of private and public interest factors favors dismissal.  *See Contact Lumber Co. v. P.T.*
21   *Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990).  However, a "defendant invoking forum
22   non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."
23   *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007).
24       1.    Existence of an Adequate Alternative Forum
25       An adequate alternative forum exists when the defendant is amenable to process in the
26   foreign jurisdiction.  *Piper Aircraft v. Reyno*, 454 U.S. 235, 254 (1981).  Here, Defendants indicate
27   that the Republic of Korea is an adequate alternative forum because they are amenable to process
28   there. (Defs.' Mot. 16:23.)  In fact, Defendants allege that Plaintiffs "have already effected service

on Defendants in Korea [in another action]."  (Defs.' Mot. 16:22-24, 17:1-2.)  Thus, because Defendants are amenable to process in the Republic of Korea, it is an adequate alternative forum.

### 2.   Choice of Law

District courts sitting in diversity apply the choice of law rules of the forum state.  *Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005).  California courts apply the following three-pronged test to resolve conflict of law issues: (1) the court must first determine whether the relevant law of each of the potentially affected jurisdictions regarding the particular issue in question is materially different; (2) if there is a difference, then the court must examine each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists; and (3) if the court finds true conflict exists, it must then apply the law of the forum whose interest would be the more impaired if its law were not applied.  *See Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006).

Defendants allege that Korean law regarding either fraud and breach of fiduciary duty differs from California law, but do not provide any evidence indicating those differences.  (*See generally* Defs.' Mot.)  Simply, a cursory statement by Defendants that Korean law should govern is insufficient to satisfy Defendants' burden under California's choice of law rules.  *See Kearney*, 137 P.3d at 922.  Accordingly, because Defendants have failed to show why Korean law should apply instead of California law, Defendants' Motion is DENIED to the extent it seeks to dismiss Plaintiffs' eight and ninth claims based on the doctrine of forum non conveniens.[10]

## III.   RULING

---

[10]   Because Defendants must satisfy all three elements of the doctrine of forum non conveniens, but do not satisfy the second element, the Court declines to address the third element, the balancing of public and private interests.  *See Contact Lumber Co.*, 918 F.2d at 1449.

1    For the foregoing reasons, Defendants' Motion is **DENIED**.  Defendants' requests to strike

2  and for a more definite statement are also **DENIED**.  Many of the issues raised by Defendants are

3  best addressed after discovery and with a more fully developed record.  Defendants have until

4  **AUGUST 23, 2010** to file an Answer consistent with this Order.

5    IT IS SO ORDERED.

6

7  Dated:  July 28, 2010.

8

9

10                                                      S. JAMES OTERO
                                                UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28